# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1845,
## AT CAMBRIDGE.

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, ⎱
Hon. CHARLES A. DEWEY, ⎰ Justices.
Hon. SAMUEL HUBBARD, ⎰

---

## Isaac Appleton *vs.* Jefferson Bancroft.

When goods under attachment are mortgaged by the general owner, and notice of the mortgage is given to the attaching officer, and the mortgage is duly recorded, the property in the goods passes to the mortgagee, subject to the lien created by the attachment; and if the goods are sold on mesne process, pursuant to Rev. Sts. *c.* 90, and an entry of " neither party " is afterwards made in the action in which they were attached, the proceeds of the sale, in the officer's hands, belong to the mortgagee.

When an officer sells attached goods, on mesne process, pursuant to Rev. Sts. *c.* 90, he is liable, in an action for money had and received, to the party entitled to the proceeds of the sale, and cannot be permitted to show, in defence, that he has received no money nor any equivalent therefor.

Assumpsit for goods sold and delivered, and for money had and received. The plaintiff annexed to his declaration a specification of his demand, in which he set forth that he claimed to recover the value of a horse, attached by the defendant, as a deputy sheriff, on a writ in favor of Daniel West

against Edward Beals, and sold by the defendant on that writ; the action in which the horse was attached having been entered in court, and finally " neither party " entered therein.

At the trial in the court of common pleas, before *Washburn*, J. the plaintiff introduced evidence that the horse in question was attached by the defendant on the writ sued out by West against Beals; that on the day after the attachment, Beals, who then owned the horse, mortgaged it, with other property, to the plaintiff, and that the mortgage was duly recorded on the same day ; that the plaintiff, after the making of said mortgage, and before the sale of the horse by the defendant, and within three days from the time of the attachment of the horse, gave the defendant written notice of the mortgage ; that the plaintiff had taken possession of the other property included in the mortgage, for condition broken ; and that the said action of West against Beals was entered at the September term of the court of common pleas, in 1842, and was continued to the next December term, when " neither party " was entered therein ; that after the action of West against Beals was entered, the horse was appraised, according to the provisions of the Rev. Sts. *c.* 90, §§ 57 – 61, and was sold at public auction, by order of the defendant, for \$56·50, to said West, and was delivered to him ; and that the auctioneer received no money from West, and paid none to the defendant; that the plaintiff, in July 1843, before he commenced this action, but after " neither party " had been entered in the action of West against Beals, demanded of the defendant the price for which the horse was sold, which the defendant refused and neglected to pay to him.

No return was filed, in the action of West against Beals, showing that the defendant sold the horse on the writ in that action.   Notice was given to the defendant to produce the return of his doings, in selling the horse, but he neglected and refused so to do.

The plaintiff contended that the jury should be charged, on this state of the case, that if they believed the horse was attached by the defendant, on West's writ against Beals, and

that he sold it on that writ, by virtue of the statute regulating the sale of property on a writ, he was liable to the plaintiff, for the price of the horse so sold, deducting the expense of sale, without any further proof by the plaintiff that the defendant received anything from the sale. But the judge refused so to instruct the jury, and gave them the following (among other) instructions :

That if the jury should be satisfied that the defendant proceeded according to the provisions of the statute authorizing sales upon mesne process, such sale would pass the property in the horse to the purchaser, and would be *primâ facie* evidence that he sold for money : That the mere act of selling the horse at auction, if he did nothing more, and if no money or other thing was paid to the defendant or his agent, and if no appropriation or application of the proceeds of the sale was made for the defendant's benefit, would not render him liable in the present action, under the form of the declaration : That if the sale was made by the defendant, as an officer, under the aforesaid provisions of the statute, the presumption was, that he received money or a satisfactory equivalent for the horse, whereby he would be liable to the present action ; and that, if the plaintiff made out this part of the case, the burden was upon the defendant to show that he merely made sale of the horse, and never received money, or any thing as an equivalent therefor. And to an inquiry by one of the jurors, the judge answered, that taking a note for the horse would render the defendant liable in this action.

A verdict was returned for the defendant, and the plaintiff alleged exceptions to the foregoing instructions.

*J. G. Abbott & S. A. Brown,* for the plaintiff. If the defendant had actually received the money for the horse, there could be no doubt of the plaintiff's right to recover in this action. Property under attachment may be sold by the general owner, so as to vest all his interest; and if the attachment is afterward dissolved, the purchaser's title becomes absolute. *Fettyplace* v. *Dutch,* 13 Pick. 388. *Arnold* v. *Brown,* 24 Pick. 89. *Putnam* v. *Dutch,* 8 Mass. 287. And the record-

20 *

ing of a mortgage of personal property is equivalent to actual delivery of the property. *Bullock* v. *Williams*, 16 Pick. 33.

When an officer sells goods on mesne process, under the Rev. Sts. *c.* 90, he becomes liable, from the time of the sale, for the price at which they are sold, and cannot set up, in defence to an action for it, that he never received the money or its equivalent. He has no right to sell for anything but money, and he cannot be permitted to say that he has not performed his duty. Otherwise, the plaintiff has no remedy. *Wheelock* v. *Hastings*, 4 Met. 504. It is not necessary in all cases, in order to support an action for money had and received, to prove that money has been actually received by the defendant. *State Bank* v. *Hurd*, 12 Mass. 172. *Randall* v. *Rich*, 11 Mass. 494. *Floyd* v. *Day*, 3 Mass. 403. Chit. Con. (5th Amer. ed.) 604. *Young* v. *Adams*, 6 Mass 182. *Crocker* v. *Baker*, 18 Pick. 407.

There is a sufficient privity of contract between the plaintiff and defendant, to sustain this action. Before the horse was sold, the defendant received notice that Beals had mortgaged it to the plaintiff. On the dissolution of the attachment, the plaintiff would have been entitled to possession of the horse, if it had not been sold by the defendant. The law raised an implied promise of the defendant to hold the proceeds of the sale for the person rightfully entitled to them. A payment by the defendant to Beals, after notice of the mortgage, would not have protected the defendant against the plaintiff's claim ; and after the plaintiff's demand of the proceeds of the sale, and the defendant's refusal to pay, the plaintiff's right of action was perfected. *Hall* v. *Marston.* 17 Mass. 579.

*B. F. Butler*, for the defendant. The plaintiff's claim under the mortgage is defective, inasmuch as there was no delivery of the horse. The case of *Bullock* v. *Williams*, cited for the plaintiff, in which it was held that recording the mortgage was tantamount to a delivery of the property mortgaged, is not decisive of the present case. There the property was in the mortgagor's possession, and in such a state that

actual delivery was possible. Here the horse had been taken from the mortgagor's possession, and was subject to other claims. If the horse had been in Beals's possession, with full power in him to deliver it, the recording might have been taken as a symbol of delivery. The power of actual delivery and the constructive delivery would have come together.

The cases cited to show that attached property may be sold, subject to the attachment, do not decide the point now in issue. In *Fettyplace* v. *Dutch*, there was an actual delivery to the purchaser, with the consent of the attaching officer's agent ; and in *Arnold* v. *Brown*, the attaching officer was the purchaser, and the court said, " there could be no difficulty " as to the delivery. In the case at bar, there was no delivery, nor could there have been any.

The jury have found, under the instructions of the judge,, that the defendant received neither money nor an equivalent therefor, on the sale of the horse. And no case cited for the plaintiff shows that the defendant is estopped to show this fact. But if an action for money had and received can be maintained by estoppel, where no money or its equivalent has been received, it cannot be maintained by this plaintiff. The defendant has no privity with any one but Beals & West. In *Pease* v. *Bancroft*, 5 Met. 90, the plaintiff, claiming title under conveyances made subsequent to an attachment, sought to recover the balance of money for which an equity of redemption was sold. The court intimated, very strongly, that the right to the balance was a chose in action, which, even if the equitable right passed to the plaintiff, by the conveyance to him, could be recovered only in the name of the original defendant in the original suit.

SHAW, C. J. It has been repeatedly decided, and the point cannot now be called in question in this Commonwealth, that property under attachment may be sold by the general owner, and a good title be given to the purchaser, subject only to the lien created by the attachment. *Denny* v. *Willard,* 11 Pick. 519. *Fettyplace* v. *Dutch*, 13 Pick. 388. *Arnold* v. *Brown,* 24 Pick. 89. Perhaps, upon considerations of policy, it might

better have been decided otherwise, but it is now too late to question it. It is founded on the great principle, lying at the foundation of the right of property, that general ownership carries with it a full power of disposition; and when such ownership is not taken away, but only limited, as in case of a lien, the power of disposing still remains, subject only to the lien. But the same decisions which show this right prove that it can be fully carried into effect, without an actual delivery, that is, a change of custody; because the custody of such property is always in the attaching officer, to preserve the lien. A constructive delivery is sufficient. But when property is in the custody of a third person for a special purpose, and a sale otherwise valid is made, notice to the person in possession is a good delivery, even though that person has a lien on the property. *Tuxworth* v. *Moore,* 9 Pick. 347. If personal property thus situated can be transferred absolutely, it may be mortgaged, which is a transfer on condition. If, as is stated in the bill of exceptions, notice of this mortgage was given to the defendant, it was a good constructive delivery. But we do not perceive why it is not within the principle of *Bullock* v. *Williams,* 16 Pick. 33, holding that registration according to law renders a mortgage of personal property valid, without a delivery.

But it is contended that money had and received will not lie for the plaintiff against the officer. To judge of this, we must consider the matter by steps. By the mortgage, the plaintiff acquired property in the horse, subject to the attachment. The attaching creditor having failed to prosecute his suit and recover judgment, his attachment was dissolved. The plaintiff then being the owner of the horse, free of the lien, the right of possession followed the right of property; and it seems, therefore, that the officer having had notice of the mortgage, after demand and time enough for inquiry, if he had failed to deliver the horse to the plaintiff, it would be a conversion. But the horse could not be demanded, because in the mean time the officer had sold him, as by law he rightfully might. Rev. Sts. *c.* 90, § 57. What

is the object of this statute ?   Not to alter the rights of parties, but to substitute, and place in the hands of the sheriff, imperishable money, requiring no expense to keep it, in place of perishable property, expensive to keep.   Then the statute provides how the money shall be disposed of.   " And the proceeds of the sale, after deducting necessary charges, shall be held by the officer, subject to the attachment or attachments, and shall be disposed of in like manner as the same property would have been held and disposed of, if it had remained unsold."   This looks to the various contingencies, and directs the money to go as the property would have gone.   If, as we suppose, on the dissolution of the attachment, the plaintiff would have been entitled to have the horse, he is entitled to have the money.   The statute gives the right and creates the duty of the officer ; and when a party has made himself liable for money, whether he has actually received it or not, this action will lie.   *Floyd* v. *Day*, 3 Mass. 403. *Randall* v. *Rich*, 11 Mass. 494.   *Emerson* v. *Baylies*, 19 Pick. 55.

The only remaining question is, whether it is competent for the defendant to show that he did not receive actual payment for the property.   We think it is not competent, and would afford no defence.   The sale was an official sale by the defendant.   The purchaser, by his bid, made an offer, the defendant, by himself or his agent the auctioneer, knocked it off, and this was an acceptance of the offer and a complete contract of bargain and sale, which passed the property to the purchaser, who became bound to pay the price, and the officer became bound to deliver the horse.   But he had a lien for the price, and was not bound to deliver the horse without tender of the price.   With this entire power in his hands, and this plain course of duty before him, when it is shown that he has sold and delivered the attached property, the law presumes that he has the money, and this presumption he cannot control by showing that, by his own neglect, and contrary to his duty, he has delivered the property without receiving the price.   If he has done so, it was at his own risk.   The same

point was decided in *Wheelock* v. *Hastings*, 4 Met. 504. There the property had been sold by the officer, under the same statute, and it was held that an assignee, who had become entitled to the property, could recover the money on a count for money had and received, though part of the money had not been received. The same rule would apply as in case of property sold on execution. All the provisions of the statute imply that it is to be a sale for cash. *Bayley* v. *French*, 2 Pick. 586. The case of *Pease* v. *Bancroft*, 5 Met. 90, has no analogy to this, in the point for which it was cited.

The court of common pleas instructed the jury, that if the officer sold the horse pursuant to the statute, it was *prima facie* evidence that he sold for money ; but if the defendant could show that he merely made sale of the horse, and never received money, or any thing as an equivalent therefor, it would be a defence ; stating, however, in answer to an inquiry, that taking a note would be such equivalent. Assuming that, by this instruction in regard to a sale, the learned judge intended to be understood *sale and delivery*, (and the whole case supposes a sale and delivery, the object of a sale under the statute being to divest the officer of the possession and relieve him from the expense of keeping,) we are of opinion, for the reasons herein before stated, that this direction was incorrect, and that the jury should have been instructed, that upon a sale under the statute, if the officer, by himself or his agent, delivered the horse, he was responsible for the money to the party entitled, and that it was not competent for him to prove, and would constitute no defence, that he had not received it.

*Verdict set aside, and a new trial granted.*